**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MANUEL D. PEGUERO, | : | |
| | : | |
| Plaintiff, | : | Civil No. 11-1476 (RMB) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| MR. MEYER, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES**:

    MANUEL D. PEGUERO, Plaintiff <u>pro se</u>
    Reg. No. # 06524-067
    FCI Beckley
    P.O. Box 350
    Beaver, West Virginia 25813

**BUMB**, District Judge

    Plaintiff, Manuel D. Peguero, a federal inmate presently confined at the FCI Beckley in Beaver, West Virginia, seeks to re-open this action that was administratively terminated by Memorandum Order issued on March 28, 2011, for Plaintiff's failure to either pay the requisite filing fee or submit a complete application to proceed <u>in forma pauperis</u> ("IFP"). (Docket entry no. 2). Plaintiff paid the $350.00 filing fee on or about April 15, 2011, and thereafter requested this Court to re-open his case accordingly. (Docket entry no. 3).

    This Court will direct the Clerk of the Court to re-open this matter and file the Complaint. At this time, this Court

must review the Complaint, pursuant to 28 U.S.C. § 1915A, to determine whether the Complaint should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should be dismissed without prejudice.

I.   BACKGROUND

Plaintiff, Manuel D. Peguero, brings this civil action, seeking compensation for a work-related injury he allegedly sustained while working at the Unicor Recycling when he was confined at FCI Fort Dix in 2005.  In particular, Plaintiff alleges that he used to work on the bailer machine, and the room next to the bailer machine was "constructed without safety." (Complaint, Section IV, Statement of Claim).  In the room, inmates would break the glass from the monitors to salvage it, and the chemical fumes that leaked from the broken monitors allegedly damaged Plaintiff's eyes.  (Id.).

Plaintiff alleges that after he was elevated to USP Lewisburg, he was diagnosed with glaucoma.  He does not have diabetes and did not have vision problems before his exposure to the chemical fumes when he was an inmate employee at Unicor Recycling in FCI Fort Dix.  Plaintiff claims that he needs treatment/medication for the rest of his life, and future surgery for his glaucoma.  (Id.).

Plaintiff brings this action against the Unicor Correctional Office, Mr. Meyer, and UNICOR, Inc. (Complaint, Caption, Section III.C). He seeks $37,000.00 in damages to cover his medication, treatment and surgery. (Compl., Section V).

Plaintiff attaches several letters he sent to prison officials regarding his claim. First, Plaintiff attaches a letter, dated June 27, 2007, he wrote to the FCI Fort Dix Safety Manager in which Plaintiff asks for the proper forms to file a claim for inmate compensation regarding his alleged eye injury. In this letter, Plaintiff relates that he had filed a tort claim notice on May 11, 2007 for a medical claim.

Next, Plaintiff attaches medical records relating to his eye injury. Specifically, the Inmate Injury Assessment and Follow-Up Form shows that Plaintiff's eye injury occurred on July 18, 2002, while he was working at Unicor 5713. It states that Plaintiff was taking out stickers from the computer with a knife and part of the stickers flew into Plaintiff's left eye.

Plaintiff also attaches the FCI Fort Dix Warden's Part B Response to Plaintiff's Administrative Remedy No. 403030-F2, dated March 6, 2006. The Warden's response relates that Plaintiff has complained of pain in his eyes and head for nine months, and requested to see an ophthalmologist or neurologist. Plaintiff's medical records revealed that he had been seen by an eye specialist on June 29, 2005, and that he received a new prescription for glasses in August 2005. On December 7, 2005,

3

Plaintiff was examined by the Consultant Optometry Specialist and no abnormalities were found.  However, he was prescribed artificial tears eye drops.

On August 7, 2007, the FCI Fort Dix Safety Manager responded to Plaintiff's earlier letter, enclosing the necessary forms for an Inmate Claim for Compensation Resulting From Work Injury, and the Inmate Accident Compensation Procedures Handbook in both English and Spanish.  The Safety Manager informed Plaintiff that Plaintiff needed to file the form no more than 45 days before his release from prison, and no less than 15 days beforehand, and that the form needed to be submitted to the Safety Manager at the institution from which Plaintiff is released.

Finally, Plaintiff attaches three letters dated November 1, 2010, August 10, 2010, and March 9, 2010, addressed to the Claims Examiner at the Federal Bureau of Prisons in Washington, D.C. and the Central Safety Committee at FCI Fort Dix.  These letters reiterate Plaintiff's alleged work injury, ask for compensation, and complain that he has not received any response.  Plaintiff's November 10, 2010 letter to the Claims Examiner also states that Plaintiff will be released from prison and promptly deported on or about February 14, 2014.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action

4

in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a

5

complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the

---

[1] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed.R.Civ.P. 8(d).

6

proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 556 U.S. at 678-79 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is

7

facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 678-79; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.]  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the

---

[2] In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

> court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [556 U.S. at 678-79]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.   ANALYSIS

A.   Eighth Amendment Bivens Claim

It is not entirely clear from the Complaint whether Plaintiff is seeking monetary relief from the named defendants under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

In Bivens, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment. In doing so, the Supreme Court created a new tort as it applied to federal officers, and a federal counterpart to the remedy created by 42

9

U.S.C. § 1983.  The Supreme Court has also implied Bivens damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and the Fifth Amendment, see Davis v. Passman, 442 U.S. 228 (1979).

Bivens actions are simply the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights.  Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004), cert. denied, 543 U.S. 1049 (2005).  Both are designed to provide redress for constitutional violations.  Thus, while the two bodies of law are not "precisely parallel", there is a "general trend" to incorporate § 1983 law into Bivens suits.  Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987)).

In order to state a claim under Bivens, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law.  See Mahoney v. Nat'l Org. For Women, 681 F. Supp. 129, 132 (D. Conn. 1987)(citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56 (1978)).

The United States has sovereign immunity except where it consents to be sued.  United States v. Mitchell, 463 U.S. 206, 212 (1983).  In the absence of such a waiver of immunity, plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged

deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), or against any of the individual defendants in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government).

To the extent that Plaintiff is seeking relief under Bivens, his claim is subject to dismissal for failure to state a claim. The Complaint asserts an alleged work injury where Plaintiff was exposed to chemical fumes while working. These allegations may be construed as an Eighth Amendment claim alleging that defendants failed to protect Plaintiff from unnecessary harm in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," Farmer v. Brennan, 511 U.S. 825, 833 (1994), and that prison officials knew of and disregarded the excessive risk to inmate safety, Id. at 837. "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact

finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842.  Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm. Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 303 (1991).  An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety."  Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

    Here, the Complaint fails to allege any facts to support a claim of deliberate indifference on the part of defendants. Plaintiff simply alleges that the room was open next to him. Moreover, this Court notes from the medical attachments to the Complaint that Plaintiff had sustained an eye injury in 2002 when he was using a knife to scrape stickers from computers and a piece flew into his eye.  Under these limited facts, as presently alleged in the Complaint, there is no factual support for an Eighth Amendment claim of deliberate indifference.  Therefore, Plaintiff's Eighth Amendment claim will be dismissed without prejudice for failure to support a claim at this time.

B.  <u>The Inmate Accident Compensation Act</u>

Plaintiff seems to assert a claim for compensation under the Inmate Accident Compensation Act, 18 U.S.C. § 4126.  The Inmate Accident Compensation Act ("IACA"), and the regulations promulgated thereunder, provide two types of compensation for a federal inmate who suffers a work-related injury in prison.  The first type of compensation is available only when the inmate is ready to be released from prison and re-enter the workforce.  28 C.F.R. §§ 301.101(a), 301.301-319.  If the inmate still suffers a residual physical impairment as a result of the work-related injury, then within forty-five days of his release date, he can submit a claim for compensation.  <u>Id</u>. § 301.303(a).  If, however, he has fully recovered from his injuries while incarcerated, he is not entitled to any compensation.  <u>Id</u>. § 301.314(a).  The second type of compensation is for wages the inmate actually loses while he is prevented from doing his work assignment due to his injury.  <u>Id</u>. §§ 301.101(b), 301.201-205.  Only the first type of compensation is at issue here.

The IACA is the exclusive remedy for a federal prisoner who is injured on the job, and it precludes recovery under the Federal Tort Claims Act ("FTCA") for a prisoner's work-related injuries.  18 U.S.C. § 4126(c)(4); <u>see also</u> 28 C.F.R. § 301.319; <u>United States v. Demko</u>, 385 U.S. 149, 152-53 (1966); <u>Vaccaro v. Dobre</u>, 81 F.3d 854, 857 (9th Cir. 1996)("[Section 4126] is a prisoner's exclusive remedy against the United States for work[-

]related injuries and bars a prisoner from suit under the [FTCA] for work[-]related injuries"); <u>Fishman v. United States</u>, 2011 WL 2618897, *2 (E.D.N.C. July 1, 2011).  The IACA regulations define "work-related injury" as "any injury, including occupational disease or illness, proximately caused by the actual performance of the inmate's work assignment."  28 C.F.R. § 301.102(a).  "The cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job."  <u>Aston v. United States</u>, 625 F.2d 1210, 1211 (5th Cir. 1980)(per curiam); "Section 4126 [also] provides the exclusive remedy where a prisoner with a pre-existing medical problem is subsequently injured in a work-related incident."  <u>Wooten v. United States</u>, 825 F.2d 1039, 1044 (6th Cir. 1987).

Here, it would appear from the allegations in the Complaint that Plaintiff's eye injury was work-related and that he may be entitled to compensation under the IACA.  However, because Plaintiff is not scheduled for release from prison until February 2014, his claim under the Inmate Accident Compensation Act is premature.  Accordingly, the Complaint will be dismissed without prejudice with respect to this claim.

IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Complaint will be dismissed without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted at this time.  An appropriate order follows.


                                    s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    United States District Judge


Dated:  September 28, 2012